UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAROLD CASE and
DEBRA CASE,

               Plaintiffs,                     CASE NO.: 8:15-cv-588-T-24TBM

vs.

CULLUM & MAXEY CAMPING
CENTER INC.,

               Defendant.
_____/

## ORDER

       This cause comes before the Court on Defendant's Motion to Dismiss the Complaint and/or Motion to Transfer Venue. Dkt. 7.  Plaintiffs sought leave to conduct limited jurisdictional discovery regarding Defendant's contacts with Florida before filing their response to the Motion to Dismiss. Dkt. 8.  The Court granted the motion for limited jurisdictional discovery (Dkt. 9) and, after conducting jurisdictional discovery (*see* Dkts. 13, 18, 19, 21, 22, 25, 26, 27)[1], Plaintiffs filed a response to the Motion to Dismiss (Dkt. 28).  With leave of Court, Defendant filed a reply.  Dkt. 31.  For the reasons stated below, the Court GRANTS Defendant's Motion to Dismiss.

---

[1] The parties engaged in written discovery and Plaintiffs took the video deposition of Defendant's corporate representative, Bud Maxey.  Despite the fact that the discovery permitted by the Court was limited to jurisdictional facts regarding Defendant's contacts with Florida, the parties were unable to resolve various discovery disputes on their own and the Court was required to intervene.  The Court entered orders granting Defendant's motion for protective order to the extent that the deposition of Mr. Maxey was to be taken by video conference (Dkt. 22), denying Plaintiffs' motion to compel better answers to interrogatories (Dkt. 25), and denying Plaintiffs' emergency motion to compel answers to deposition questions (Dkt. 27).

I.      **PROCEDURAL BACKGROUND**

Plaintiffs filed their complaint in state court on February 18, 2015 and Defendant removed the case to this Court on March 17, 2015.  Dkts. 1, 2.  Plaintiffs are Harold Case and Debra Case, individuals that reside in Hillsborough County, Florida.  Dkt. 2, ¶¶ 1, 2.  Defendant Cullum & Maxey Camping Center, Inc. ("Cullum & Maxey"), is a Tennessee Corporation located in Nashville, Tennessee that sells luxury motor coaches and campers.  On May 29, 2012, Plaintiffs purchased a luxury motor coach from Defendant for $120,156.70.  *Id.*, ¶¶ 5, 7.  As part of the transaction, Plaintiffs traded in a 5th wheel trailer for $34,000.  *Id.*, ¶ 9.  In January 2015, Plaintiffs received a call from the Federal Bureau of Investigation ("FBI") notifying them that the motor coach was a stolen vehicle.  *Id.*, ¶ 13.  The FBI subsequently seized the motor coach, including the upgrades made to the vehicle by Plaintiffs.  *Id.*, ¶ 15.  Plaintiffs allege that the motor coach did not have clear title, that Defendant knew or should have known that the vehicle was stolen, and that Defendant knowingly sold Plaintiffs a stolen luxury motor coach. Plaintiffs bring claims against Defendant for breach of contract, civil theft, conversion, negligence, gross negligence, violation of Florida's Deceptive and Unfair Trade Practices Act, and negligent infliction of emotional distress.  Dkt. 2.

In the Complaint, Plaintiffs allege that the Court has personal jurisdiction over Defendant and venue is proper in this matter because the sale of the motor coach was finalized in Hillsborough County, Florida and because the tag, title, registration and financing were obtained in Hillsborough County, Florida.  *Id.*, ¶ 6.  Defendant filed a motion to dismiss the complaint and/or motion to transfer venue and asserted that the Court does not have personal jurisdiction over Defendant and, if it does have jurisdiction over Defendant, that the action should be transferred to the Middle District of Tennessee as the more convenient forum.  Dkt. 7.

II.   **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant argues that the Court lacks personal jurisdiction over it and seeks to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2).

The determination of whether the court has personal jurisdiction over a defendant is governed by a two-part analysis.  First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute.  *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citations omitted).  Second, if the court determines that the long-arm statute is satisfied, the court must inquire as to: (1) whether defendant has established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction over defendant would offend "traditional notions of fair play and substantial justice."  *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310 (1945)).

On a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing by a preponderance of the evidence that the court has jurisdiction over the defendant.  *Smith*, 689 F. Supp. 2d at 1312.  If the plaintiff meets this burden by alleging sufficient facts in the complaint to initially support jurisdiction, the burden then shifts to the defendant to make a prima facie showing of the inapplicability of the statute providing the basis for jurisdiction.  *Future Tech.*, 218 F.3d at 1249 (quotation omitted).  If the defendant sustains the burden, the plaintiff must substantiate the jurisdictional allegations in the complaint "by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."  *Id.*  Where the plaintiff's complaint and supporting affidavits and documents conflict with the defendant's affidavits, the court construes all reasonable inferences in favor of the plaintiff.  *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

Florida's long-arm statute provides for both general and specific personal jurisdiction.  *See* Fla. Stat. § 48.193(1)-(2).  General personal jurisdiction exists when a defendant "is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2).  General personal jurisdiction is based on a defendant's substantial activity in Florida without regard to where the cause of action arose.  *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n. 27 (11th Cir. 2009).

On the other hand, specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts relate to the plaintiff's cause of action. *See id.*

A.    **Jurisdictional Allegations**

According to the Complaint, Plaintiffs allege that the Court has jurisdiction over Defendant because the sale of the motor coach was finalized in Hillsborough County, Florida and because the tag, title, registration and financing were obtained in Hillsborough County, Florida.  Dkt 2, ¶ 6. Plaintiffs also allege that the motor coach they purchased from Defendant was delivered to Plaintiffs' home in Hillsborough County, Florida.[2]  *Id.*, ¶ 5.  Plaintiffs also generally allege that Defendant, which is a Tennessee corporation that sells luxury motor coaches and campers to customers all over the country including Florida, "does business in Florida directly and through its internet related activities."  *Id.*, ¶ 4.  The Complaint does not contain any additional allegations regarding jurisdiction.

---

[2] The affidavit of Plaintiff Harold Case submitted in opposition to the motion to dismiss contradicts this allegation and states that he "took delivery of the motor coach in Tennessee and drove it to [his] home in Florida."  Dkt. 28 at pg. 20, ¶ 11.

Defendant contests personal jurisdiction in the motion to dismiss by asserting that Cullum & Maxey does not operate, conduct, engage in, or carry on a business in Florida such as to bring this claim within Florida's long arm statute.  In addition, Defendant states that Cullum & Maxey does not maintain the minimum contacts with the state of Florida to satisfy due process afforded to non-residents.  Dkt. 7 at 7.  Defendant supports these contentions with the March 31, 2015 affidavit of Cullum & Maxey's general manager, Bud Maxey.  Maxey states that Cullum & Maxey is located in Nashville, Tennessee and has no operations, including employees, agents, a facility, branch, office, or other place of business, in Florida.  Dkt. 7-1, ¶¶ 3, 4.  Cullum & Maxey has not sought to be qualified to do business in Florida, pays no taxes in Florida, does not have a Florida bank account, address, or telephone listing.  *Id.*, ¶¶ 5, 6, 7.  Maxey states that although Cullum & Maxey advertises on the internet via a company website and postings on Craigslist for the Tennessee region, Cullum & Maxey does not advertise in Florida, nor is its advertising directed at Florida or "contained in publications directed primarily toward Florida residents."  *Id.*, ¶ 8.  Maxey states that "over the years,[3] less than 10% of Cullum & Maxey's sales involve purchases outside of Tennessee and only 1-3 of its total sales are to residents from Florida [i]n any given year."  *Id.*, ¶ 14.

As for Plaintiffs' purchase of the motor coach, Maxey states that the sale occurred in person at Cullum & Maxey's dealership in Nashville, Tennessee on May 29, 2012.  *Id.*, ¶ 9.  No negotiations were conducted via Cullum & Maxey's website.  Instead, Maxey states that Plaintiffs initiated contact with Cullum & Maxey's sales representative at the dealership.  *Id.*  The contract for the motor coach was executed at the Cullum & Maxey dealership.  *Id.*, ¶ 10.  Plaintiffs obtained financing for the motor coach while at Cullum & Maxey.  *Id.*  In fact, all documents concerning

---

[3] Maxey does not state the number of years he is referring to.

the transfer of title for the motor coach were "prepared, finalized, and executed in Nashville, Tennessee" and "[a]ny such relevant documents remain in the possession, custody and control of Cullum & Maxey in Nashville, Tennessee." *Id.*, ¶ 15.  Plaintiffs took delivery and possession of the motor coach at Cullum & Maxey's dealership in Tennessee and drove it out of the facility. *Id.*, ¶ 11.  Cullum & Maxey took possession of the fifth wheel that Plaintiffs traded in for the motor coach at the Tennessee dealership. *Id.*

After the filing of the April 1, 2015 motion to dismiss, the Court granted Plaintiffs' request to engage in limited jurisdictional discovery before Plaintiffs filed their response to the motion. On June 29, 2015, Plaintiffs filed their response to the motion to dismiss (Dkt. 28) and in support submit the June 26, 2015 affidavit of Harold Case (*Id.* at 19-20), the June 19, 2015 deposition of Bud Maxey (*Id.* at 21-69), and Defendant's answers and supplemental answers to jurisdictional interrogatories (*Id.* at 70-85).

As for the sale of the motor coach that is at issue in this case, Plaintiff Harold Case found the motor coach advertised on the Craigslist website for the Tennessee region.  Dkt. 28 at pg. 20, ¶ 6.  Mr. Case then visited Cullum & Maxey's website and found the motor coach listed for sale there as well. *Id.*, ¶ 7.  After calling Cullum & Maxey and expressing interest in purchasing the motor coach, Plaintiffs drove to Tennessee, purchased the motor coach from Cullum & Maxey in Nashville, Tennessee, traded in a fifth wheel trailer, took delivery of the motor coach at Cullum & Maxey's dealership, and drove the motor coach home to Florida. *Id.*, ¶¶ 8, 9, 11.  Plaintiffs obtained financing through Cullum & Maxey and filed the financing statement (lien) in Florida. *Id.*, ¶ 10.  The vehicle's tag and title are registered in Florida. *Id.*, ¶ 12.  In January 2015, law enforcement seized the motor coach from Plaintiffs in Florida because it had been reported as a stolen vehicle. *Id.* at pg. 19, ¶ 3.

Defendant's website lists vehicles for sale and it is updated on a regular basis.  Dkt. 28 at 57; Depo. of Maxey pg. 36, lines 18-21.  Since June of 2012, Defendant's website has also included a parts store where parts and supplies may be purchased directly through the website.  Since its inception, no sales of parts and supplies have been made to individuals or entities in Florida.  Dkt. 28 at 79 (interrogatory no. 17).

Cullum & Maxey's website is maintained by Ultimate Video Showcase ("UVS"), which is located in Orlando, Florida.  Dkt. 28 at 80 (interrogatory nos. 22, 23).  Defendant has used UVS as its website provider for four or five years, may or may not have a contract with UVS,[4] and pays UVS on an annual basis.  Dkt. 28 at 27, 28; Depo. of Maxey pg. 7 lines 19-21, pg. 7 lines 22-24.  Visitors to the website may enter their phone number, address, and e-mail address via a "Let us know how we can help" or "contact us" links.   If a visitor utilizes the "Let us know how we can help" or "contact us" links and enters their information when prompted, UVS forwards that information to Cullum & Maxey in an e-mail.  *Id.* at 29; Depo of Maxey pg. 8 lines 20-25.  Maxey emphasized that Cullum & Maxey has "very little contact with [UVS]."  Dkt. 28 at 29; Depo. of Maxey pg. 8, lines 12-19.  Instead, UVS monitors the website, provides leads to Defendant obtained through the "let us know how we can help" and "contact us" links, and includes the parts store.  *Id.*

Plaintiffs do not address the frequency with which Defendant contracts with or makes sales to Florida residents.

The Court permitted Defendant to file a reply to Plaintiffs' response to the motion to dismiss in order to address any new jurisdictional allegations contained therein.   Dkt. 30.

---

[4] Although Maxey testified that Cullum & Maxey does not have a contract with UVS, Defendant's interrogatory responses, signed by Maxey, refer to a "service agreement" with UVS.  Dkt. 31-2 at 2 (supp. interrogatory no. 23).

Defendant contends that Plaintiffs inaccurately characterized Cullum & Maxey as a large-scale company that actively engages in business within the state of Florida.  In support of this argument, Defendant submits its answers to Plaintiffs' jurisdictional interrogatories (Dkt. 31-1), its supplemental answers to Plaintiffs' interrogatories (Dkt. 31-2), the deposition of Bud Maxey (Dkt. 31-3),[5] the March 31, 2015 affidavit of Bud Maxey (Dkt. 31-4), and the June 26, 2015 affidavit of Harold Case (Dkt. 31-5).

Defendant points out that from 2010 to 2014, Cullum & Maxey sold 1,419 units (motor coaches/vehicles).  Dkt. 31-1 at 2 (interrogatory no. 1).  Of those 1,419 units, Cullum & Maxey sold ten to individuals who provided Florida as their primary address.  *Id.* at 2-3 (interrogatory no. 2).  Thus, .7% of Case & Cullum's sales over the past five years were to Florida residents.  Over that same period of time, two entities or individuals located within Florida have applied for financing with Cullum & Maxey.  Dkt. 31-2 (supp. interrogatory no. 16).  All aspects of the sales transactions including financing, contracts, and trade-ins take place at Cullum & Maxey's dealership in Nashville, Tennessee.  Dkt. 31-1 at 5 (interrogatory no. 6).  Direct contact with individuals located in Florida is limited to responding via e-mail or telephone to those individuals who have utilized the "let us know how we can help" or "contact us" links on Defendant's website. *Id.* at 4-5 (interrogatory nos. 4, 5).  Since December 2014, no one using a computer in Florida has utilized the "let us know how we can help" or "contact us" links.  *Id.*  Defendant does not direct advertising toward Florida nor does it advertise in Florida.  Dkt. 31-4 at 2, ¶ 8.  Although the website has also included a parts store since 2012, no sales have been made to individuals or entities in Florida.  Dkt. 31-1 at 10 (interrogatory no. 17).  Maxey testified that most of the out of state customers come from the 800 campsites surrounding Cullum & Maxey's Nashville,

---

[5] Plaintiffs also submitted the deposition of Maxey, but not the errata sheet.

Tennessee dealership rather than from its website.  Dkt. 31-3 at 10; Depo. of Maxey pg. 34 lines 7-18).

## III.   <u>DISCUSSION</u>

As discussed above, in order to establish personal jurisdiction over Defendant, Plaintiffs must satisfy both Florida's long-arm jurisdictional statute, Fla. Stat. § 48.193, and constitutional notions of due process.

### A.      **Specific Jurisdiction**

Section 48.193(1) addresses specific jurisdiction, permitting jurisdiction over non-resident defendants who engage in certain enumerated acts.  In this case, Plaintiffs rely on the tortious act provision in § 48.193(1)(a)(2) of Florida's long-arm statute.  Dkt. 28 at 6.  That section provides:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts: committing a tortious act within this state.

§ 48.193(1)(a)(2), Fla. Stat.

"Under Florida law, a nonresident defendant commits a tortious act within Florida when he commits an act outside the state that causes injury within Florida."  *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tenn., Inc.*, No. 6:14-CV-947-ORL-41, 2015 WL 1534446, at *3 (M.D. Fla. Apr. 6, 2015).  The alleged tortfeasor's physical presence in Florida is not required.  *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)).  "For example, allegations about an out-of-state defendant's telephonic, electronic, or written communications into Florida are sufficient to trigger jurisdiction under the long arm statute provided, however, that the cause of action arises from those communications."  *Id.* (quotation omitted).  In *Acquadro v.*

*Bergeron*, 851 So. 2d 665, 671 (Fla. 2003), the Florida Supreme Court found that there was personal jurisdiction under Fla. Stat. § 48.193(1)(a)(2)[6] where an out of state defendant allegedly defamed a Florida resident during a phone call made into Florida.  This "connexity" must be present for courts to assert personal jurisdiction over an out of state defendant under Fla. Stat. § 48.193(1)(a)(2).  *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 954-55 (11th Cir. 2010).  If the "connexity" requirement is not met, *i.e.,* the alleged causes of action did not arise out of the communications into the state by the non-resident defendant, and personal jurisdiction does not exist over the non-resident defendant.  *Walack v. Worldwide Mach. Sales, Inc.*, 278 F. Supp. 2d 1358, 1367 (M.D. Fla. 2003).  One Florida appellate court has noted that:

> If the Legislature intended for [Fla. Stat. § 48.193(1)(a)(2)] to encompass all tortious acts which were complete outside Florida but ultimately have consequences here only because a Florida resident suffers damages, we believe it would be incumbent on the Legislature to make that statutory purpose clear in the plainest of language.  Because we do not yet discern such a purpose, we limit the statutory provision to its plain and obvious meaning, [which is the commission of a tortious act within Florida].

*Korman v. Kent*, 821 So. 2d 408, 411 (Fla. 4th DCA 2002).

Plaintiffs argue that section 48.193(1)(a)(2) is satisfied because Plaintiffs were harmed when the motor coach was seized by law enforcement at their home in Florida and thus the injury occurred in Florida.  However, the alleged out of state torts are in no way connected to Florida.  It cannot be said, nor can Plaintiffs allege, that Defendant's sale of a stolen vehicle in Tennessee was expressly aimed at Florida, even though Plaintiffs allege that the resulting injury occurred in Florida.  The causes of action alleged in this case are (1) breach of contract, (2) civil theft, (3) conversion, (4) negligence, (5) gross negligence, (6) violation of FDUPTA, and (7) negligent infliction of emotional distress.  Plaintiffs must show that the alleged torts (civil theft, conversion,

---

[6] Formerly Fla. Stat. § 48.193(1)(b).

etc.) were committed by Defendant and directed at Florida.  They do not.  Plaintiffs point to no case law and the Court is not aware of any that would allow for it to assert personal jurisdiction over Defendant under Fla. Stat. § 48.193(1)(a)(2).

Having found that Plaintiffs do not and cannot allege sufficient facts to satisfy the Florida long-arm statute for specific jurisdiction under Fla. Stat. § 48.193(1)(a)(2), the Court next looks to whether it has general jurisdiction over Defendant under the long-arm statute.

### B.        General Jurisdiction

Section 48.193(2), Florida Statutes, addresses the court's ability to exercise general jurisdictional over a non-resident defendant.  It provides that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  § 48.193(2), Fla. Stat.  Thus, general personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation.  *Walack*, 278 F. Supp. 2d. at 1366.

Because general personal jurisdiction is based on contacts *unrelated* to the cause of action being litigated, the due process requirements for general jurisdiction must be assessed under a "stricter standard" than those for specific jurisdiction.  *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir. 2000).  Under this stricter standard, a defendant's contacts with the forum state "must be so extensive to be tantamount to a defendant being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in the forum state's courts in any litigation arising out of any transaction or occurrence taking place anywhere in the world."  *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1386 (S.D. Fla. 2014) (quotation omitted).  Put another way, a defendant's activities must be "so continuous and

systematic as to render [the defendant] essentially at home in the forum state." *Daimier AG v. Bauman*, 134 S.Ct. 746, 749 (2014) (quotation omitted).

Plaintiffs argue that the Court has general personal jurisdiction over Defendant because Defendant has engaged in substantial activity within Florida through its relationship with its website provider, UVS, which is located in Orlando, Florida.  Dkt. 28 at 7.  In support of this argument, Plaintiffs state that Defendant has had an ongoing relationship with UVS for four or five years and pays UVS to maintain its website.  UVS sends Defendant one to two internet leads (received when a visitor to the website provides their contact information through the "Let us know how we can help" or "contact us" links) by e-mail on a daily basis.  UVS also manages the online parts store.  Any orders placed online go through UVS which then e-mails the purchase information to Defendant.  Plaintiffs argue that these activities establish a pattern of continuous and substantial activity within Florida over the past four or five years.  According to Plaintiffs, the fact that Defendant has chosen to use a website provider in Florida, rather than in Tennessee, shows that Defendant has purposefully availed itself of the privilege of conducting business within Florida.

In response, Defendant points out that Cullum & Maxey pays UVS on an annual basis, rather than on a monthly basis, thus limiting the frequency of its contacts with UVS.  Defendant argues that "one isolated service agreement with one entity in Florida is not sufficient to bring Defendant under Florida's long-arm statute."  Dkt. 31 at 6.  Defendant states that the internet leads and online orders are forwarded from UVS to Defendant via an automated process and does not support a finding that this creates substantial activity within Florida.  *Id.*  Defendant argues that while it advertises on the internet, its website is passive and insufficient to confer jurisdiction.

A passive web site only makes information available to those interested in viewing the web site in foreign jurisdictions, whereas an active web site allows for those interested in foreign

jurisdictions to enter into contracts over the Internet with the defendant.  The middle ground is occupied by interactive websites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the site.  *Zippo Mfg. Co. v. Zippo Dot Com. Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).

Defendant is correct in its argument that the fact a foreign defendant contracts with a Florida resident is not enough to establish general personal jurisdiction over the defendant. *Walack*, 278 F. Supp. 2d. at 1366 (citing *Washington Capital Corp. v. Milandco, Ltd., Inc.*, 695 So. 2d 838, 841 (Fla. 4th DCA 1997)).  Moreover, "a website is not well-suited to serve as a basis for general jurisdiction."  *Rexam Airspray, Inc. v. Arminak*, 471 F. Supp. 2d 1292 (S.D. Fla. 2007).

> Under the *Zippo* test, it is possible for a Web site to be very interactive, but to have no quantity of contacts.  In other words, the contacts would be continuous, but not *substantial*.  This is untenable in a general jurisdiction analysis.  As one court has noted, the *Zippo* test 'is not well adapted to the general jurisdiction inquiry, because even repeated contacts with the forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction.'

*Rexam Airspray*, 471 F. Supp. 2d at 1301(quoting *Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 712 (8th Cir. 2003)) (emphasis in original).

The evidence submitted by the parties in this case relates to the sections of the website that list available vehicles for sale, the "Let us know how we can help" and "contact us" links, and the online parts store.  The inventory section of the website that lists available vehicles is the section of the website visited by Plaintiff Harold Case where he saw the motor coach listed for sale. Plaintiff subsequently called Defendant and inquired about the motor coach.  A visitor to the website cannot contract directly through the website for the purchase of the vehicles listed for sale

on the website, so this portion of the website is passive because it is limited to a listing of inventory rather than permitting a user to exchange information and enter into contracts online.

In the event a visitor to the website utilizes the "Let us know how we can help" and "contact us" links regarding the inventory listed on the website, such activity falls into the middle ground between an active and passive website because the user is able to exchange information with the host computer.  Thus, the Court will look to the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine jurisdiction.  *Zippo*, 952 F.Supp. at 1124.  UVS receives one to two leads a day from the "contact us" and "let us know how we can help" links, which UVS then forwards to Defendant on a daily basis via an automated process.  That information includes a customer's contact information and the type of vehicle they may be interested in learning more about.   Since December 2014, no one using a computer in Florida has utilized the "Let us know how we can help" or "contact us" links.  As for these functions of the website, although some of the contacts between UVS and Defendant may be continuous by virtue of UVS forwarding leads to Defendant, they are not the *substantial*, continuous, and systematic contacts required for a finding of general jurisdiction.  The "level of interactivity" and "commercial nature of the exchange of information" is restricted to the exchange of a limited amount of information regarding a customer's contact information and interest in a vehicle.

With regard to the evidence submitted concerning the parts store, customers can contract with Defendant via its website, which is indicative of an active website   However, no Florida residents or entities have made any online purchases from the parts store since its inception in 2012.  Based on the evidence submitted by the parties regarding Defendant's website, the website, viewed as a whole, is not active for purposes of the Court's jurisdictional analysis.

14

Here, Plaintiffs have not established sufficient contacts between Defendant and the state of Florida in order to satisfy Florida's long-arm statute.  Because general jurisdiction allows a court to exercise jurisdiction over any type of suit whatsoever, Florida requires that the contacts must be especially pervasive and substantial to satisfy Fla. Stat. § 48.193(2).  Accordingly, Fla. Stat. § 48.193(2) provides courts with general jurisdiction only over a defendant who has "substantial and not isolated" contacts with Florida.  Plaintiffs have not come forward with evidence to satisfy this standard.

Because the Court finds that Plaintiffs have not satisfied the Florida long-arm statute, it is not necessary to consider whether the exercise of personal jurisdiction would comport with federal due process.  The Court does not have personal jurisdiction over Defendant.

## IV.   MOTION FOR TRANSFER OF VENUE

Defendant asks that to the extent the Court does not dismiss for lack of personal jurisdiction that the Court transfer this action to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a).  Because the Court has found that it does not have personal jurisdiction over Defendant, the Court need not address this request.

## V.   CONCLUSION

The Court finds that Plaintiffs have not sustained their burden in establishing that this Court has personal jurisdiction over Defendant.  The Court GRANTS Defendant's Motion to Dismiss the case.  The Clerk is directed to close the case and terminate all pending motions.

DONE AND ORDERED at Tampa, Florida, this 18th day of August, 2015.

SUSAN C. BUCKLEW
United States District Judge

Copies Furnished to: Counsel of Record